**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| AMY E. ALEXANDER,<br><br>      Plaintiff,<br><br>      v.<br><br>ANDREW BOUSE, STOPTECH, LTD.,<br>and STOP STICK, LTD.,<br><br>      Defendants. | Case No. 17-2067 |

## MEMORANDUM AND ORDER

This matter comes before the court upon defendants Stop Stick, Ltd. and StopTech, Ltd.'s Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Docs. 11, 13) and defendant Kansas Highway Patrol ("KHP") Trooper Andrew Bouse's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (Doc. 25). Plaintiff Amy E. Alexander brings claims against defendant Bouse pursuant to 42 U.S.C. § 1983 for alleged violations of her substantive due process rights and under Kansas law for negligence. She brings negligence and products liability claims against defendants Stop Stick, Ltd. and Stoptech, Ltd. For the reasons explained below, the motions are granted in part and denied in part as moot.

    **I.    Background**

The amended complaint alleges that on February 15, 2015, plaintiff was driving her car southbound on Highway 69 in Miami County, Kansas. She came to a road block, where a KHP Trooper, defendant Bouse, directed her to pull over. She pulled over as far as she could, but the way was at least partially blocked by other pulled-over vehicles. Defendant Bouse had blocked one southbound lane with his car and the other with "stop sticks." "Stop sticks" are strips of material linked together with protruding spikes, used to puncture tires. Plaintiff was not given any other

directions or information. Defendant Bouse exited the roadway. Shortly thereafter, Steven Ray Smith approached from the incorrect direction and drove his Ford F-150 at an estimated 90–100 mph over the stop sticks, rupturing his left front tire and causing him to lose control of the vehicle. Smith's truck hit plaintiff's car, collapsing the driver's side, pinning her in, and causing life-threating injuries. Plaintiff's "injuries included a torn aorta, a shattered pelvis, a lacerated spleen, left kidney hematoma, pneumothorax, hemothorax, a broken nose and broken ribs. . . ." (Doc. 3 at 7.)

Plaintiff claims Smith had been observed traveling in the wrong lane in both Linn and Miami Counties, and that the Miami County Sheriff's Department was pursuing him. The pursuit covered nearly twenty miles and passed around fifty other cars without incident before the collision with plaintiff. Plaintiff claims that defendant Bouse was not initially involved in Smith's pursuit, was not asked or approved to join the pursuit either by a KHP supervisor or by the Miami County Sheriff's Department, and his actions violated the mandatory rules of conduct promulgated by the KHP when he created a roadblock without supervisor authorization and under unsafe conditions.

Plaintiff's First Amended Complaint alleges the following counts:

   I.   42 U.S.C. 1983 § Due Process Claim (Bouse)

  II.   Negligence under the Kansas Tort Claims Act (Bouse)

 III.   Negligent Failure to Warn – common law (Stop Tech)

 IV.   Strict Liability/Failure to Warn (Stop Tech)

  V.   Negligent Failure to Warn (Stop Tech)

 VI.   Negligent Failure to Warn – common law (StopStick)

VII.   Strict Liability/Failure to Warn (StopStick)

VIII.  Negligent Failure to Warn (StopStick)

 IX.   Loss of Consortium (All Defendants)

**II.     Legal Standards**

**A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)**

Dismissal pursuant to Fed. R. of Civ. P. 12(b)(1) is appropriate when the court lacks subject matter jurisdiction over a claim. Plaintiff claims that subject matter jurisdiction exists and has the burden of establishing it. *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008). Because federal courts are courts of limited jurisdiction, there is a strong presumption against federal jurisdiction. *Sobel v. United States*, 571 F. Supp. 2d 1222, 1226 (D. Kan. 2008).

Motions for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's jurisdictional allegations; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based. *Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir. 1995). For a facial challenge, the court accepts the plaintiff's factual allegations regarding jurisdiction as true. *Id.* at 1002. But for a factual attack, the court does not presume that the plaintiff's allegations are true. *Id.* at 1003. Rather, "[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion." *Id.*

**B.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)**

The court will grant a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) only when the factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the factual allegations need not be detailed, the claims must set forth entitlement to relief "through more than labels, conclusions and a formulaic recitation of the elements of a cause of action." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1216 (D. Kan. 2008). The allegations must contain facts sufficient to state a

claim that is plausible, rather than merely conceivable. *Id.* "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). The court construes any reasonable inferences from these facts in plaintiff's favor. *Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006).

### III.  Discussion

#### A.  Defendant Bouse's Motion to Dismiss

Defendant Bouse's motion to dismiss raises several arguments: (1) any claim against defendant for monetary damages in his official capacity is barred by sovereign immunity; (2) any claims against defendant in his individual capacity are barred by qualified immunity; and (3) if the court dismisses the federal claims, it should not exercise supplemental jurisdiction over the Kansas Tort Claims Act ("KTCA") negligence claim, which also fails to state a claim and is barred because defendant Bouse has discretionary function and police protection immunity.

##### 1.  Plaintiff's Official Capacity Money Damages Claims Are Barred by Sovereign Immunity

As a preliminary matter, it is not clear whether plaintiff is asserting official capacity or individual capacity claims against defendant Bouse, so the court addresses both possibilities. "The Eleventh Amendment, and the concept of sovereign immunity it embodies, bars suits against states absent an express and unambiguous waiver or abrogation by Congress." *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). States' sovereign immunity generally deprives the federal courts of subject-matter jurisdiction. *Id.* (noting the exception for suits seeking prospective injunctive relief against state officials for violations of state law).

State agencies, such as the KHP, and their officials are also immune from suit for retrospective relief—including monetary damages. *Id.* Plaintiff does not contest defendant Bouse's argument that

he is entitled to sovereign immunity in his official capacity for money damages. To the extent that plaintiff sought to assert such a claim, it is dismissed.

### 2. Plaintiff's Individual Capacity Claims Are Barred by Qualified Immunity

Plaintiff claims that defendant Bouse violated her right to substantive due process by putting her in danger when he directed her to pull over after creating a road block to stop a drunk driver. She claims that this violation was clearly established at the time of her injuries.

#### a. Qualified Immunity

Qualified immunity is a defense to individual capacity claims. "An official sued under § 1983 is entitled to qualified immunity unless it is shown that the official violated a statutory or constitutional right that was 'clearly established' at the time of the challenged conduct." *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (quoting *Ashcroft*, 563 U.S. at 735). A right is not "clearly established" under the law "unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Id.* This means that "existing precedent must have placed the statutory or constitutional question confronted by the official 'beyond debate.'" *Id.* Qualified immunity protects public employees from the burdens of litigation as well as liability. *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to show "(1) that the official violated a statutory or constitutional right, *and* (2) that the right was 'clearly established' at the time of the challenged conduct." *Id.* (emphasis in original). If the plaintiff fails to prove either part of this test, the defendant is entitled to qualified immunity.

A plaintiff may show that a right is clearly established by citing either an-on point United States Supreme Court or Tenth Circuit Court of Appeals case, or by showing that the weight of authority from other circuits supports his or her position. *Id.* But a case on point is not always

required.  The Tenth Circuit has also adopted a sliding-scale analysis for which the "more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."  *Id.* (quoting *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007).  The court exercises its discretion based on the facts of each case in deciding which prong to first address.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Courts generally accept a plaintiff's version of the facts as true for purposes of qualified immunity.

### b. Fourteenth Amendment Substantive Due Process

Plaintiff alleges that defendant Bouse violated her Fourteenth Amendment Substantive Due Process Rights.  The Fourteenth Amendment provides that "No State shall . . . deprive any person of life, liberty, or property, without due process of law. . . ."  U.S. CONST. amend. XIV, § 1.  "[H]istorically, this guarantee of due process has been applied to *deliberate* decisions of government officials to deprive a person of life, liberty, or property." *Daniels v. Williams*, 474 U.S 327, 331 (1986) (emphasis in original)).  "The substantive component of the Due Process Clause bars "certain government actions regardless of the fairness of the procedures used to implement them."  It "does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998).  And it is "not a font of tort law to be superimposed upon whatever systems may already be administered by the States."  *Id.* (quoting *Daniels*, 474 U.S at 322).  It does cover "conduct intended to injure in some way unjustifiable by any government interest in the sort of official action most likely to rise to the conscience-shocking level."  *Id.* at 849.

### c. Clearly Established

As mentioned above, the court may choose to address either the clearly established or the constitutional violation element of a § 1983 claim first.  In this case, the court elects to begin with the

clearly established analysis. The parties disagree about what the law requires plaintiffs to show in order to demonstrate that the law was clearly established for purposes of a § 1983 Due Process claim. Defendant Bouse argues that plaintiff must cite clearly established case law that would have put defendant Bouse on notice that his actions would expose him to liability. Plaintiff argues that showing that the state-created danger theory was clearly established is sufficient, citing two Tenth Circuit decisions from the late 1990's, *Armijo v Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998) (explaining that a plaintiff "does not have to show that the specific action at issue had been held unlawful but the alleged unlawfulness of the defendant's conduct must be apparent in light of preexisting law," and that the Tenth Circuit does "not require plaintiffs to produce a factually identical case, but allow[s] some degree of generality in factual correspondence.") and *Sutton v. Utah State School For Deaf and Blind*, 173 F.3d 1226, 1241 (10th Cir. 1999) (stating that "the Tenth Circuit has also clearly established that a state official may be liable for the violence committed by private actors under the 'danger-creation' doctrine"). Plaintiff's argument is unpersuasive to the court given the weight of case law that suggests otherwise and the lack of analysis supporting plaintiff's interpretation of the cited cases.

The Supreme Court has repeatedly emphasized that qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Ashcroft*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). The Supreme Court reiterated basic principles of qualified immunity in its decision in *White v. Pauly*, 137 S. Ct. 548 (2017), cited by defendant. The court noted that it had recently issued several opinions reversing federal courts for failing to dismiss cases after qualified immunity had been raised. The Court reiterated that the "clearly established law" requirement "should not be defined at a high level of generality" but "must be particularized to the facts of the case." *Id.* at 552.

The Supreme Court noted that the clearly established requirement generally requires citation to "a case where an officer acting under similar circumstances" was held to have violated the constitutional right that was allegedly violated. *Id.* If the court were to accept plaintiff's interpretation of the clearly established requirement—allowing plaintiff to proceed based on a showing that a legal exception to the rule that generally no liability exits—the protections of qualified immunity would be effectively destroyed in the substantive due process context.

Supporting this conclusion is the Tenth Circuit's 2006 decision in *Moore v. Guthrie*, 438 F.3d 1036, 1042–43 (10th Cir. 2006). In analyzing whether qualified immunity should apply where the plaintiff was injured during a "live fire" training exercise and argued that his superior should have provided different safety equipment, the Tenth Circuit considered whether plaintiff's substantive due process rights were violated, and whether the law was clearly established at the time. Plaintiff raised both the danger creation theory and the special relationship doctrine, which plaintiff also asserts in this case and the court will briefly discuss below.

The Tenth Circuit framed the issue as "whether [the plaintiff's] right to bodily integrity had been clearly established so that a reasonable official in the defendant's situation would have understood that his conduct violated that right." *Id.* at 1042. The *Moore* decision further emphasized that "[a]lthough Plaintiff does not need to find a case with an identical factual situation, he still must show legal authority which makes it apparent that in the light of pre-existing law a reasonable official, in [defendant's] position, would have known that having police officers wear riot helmets rather than Simunition face masks would violate their substantive due process right of bodily integrity." *Id.* The court noted that "the Supreme Court has only recognized a right to bodily integrity under the Fourteenth Amendment in very limited circumstances, not including working in a safe environment.

Second, courts have declined to find a violation of substantive due process in circumstances similar to, or more shocking than, that alleged by Plaintiff." *Id.* at 1043.

### d. Plaintiff Has Not Shown The Law Was Clearly Established

The question before this court then, is whether, at the time of plaintiff's injuries, the law clearly established that defendant Bouse's actions would expose him to liability for violations of plaintiff's substantive due process rights. Plaintiff needed to cite either a Supreme Court case, a Tenth Circuit case, or show that the weight of authority from other circuits supported a finding that the law at the time of plaintiff's injuries clearly established that defendant Bouse's actions were unlawful.

Plaintiff cites a single case from the Seventh Circuit, *Reed v. Gardner*, 986 F.2d 1122 (7th Cir. 1993), to support her alternative claim that the law is clearly established under facts like those involved in this case. This is insufficient to show that the weight of authority from other circuits should be interpreted to clearly establish the law at issue in this case.

In any event, the court finds the *Reed* decision factually dissimilar. It involved police arresting a driver the court assumed to be sober from a car. The police left the passenger, who the police knew to be drunk, behind with the keys. The drunk passenger, then drove the car and caused an accident injuring the plaintiffs. The Seventh Circuit decided that the police created a danger or rendered other drivers more vulnerable to danger by leaving the drunk passenger with the car keys after removing the sober driver. The court explained that its decision would have been different if the police had arrested a drunk driver and left a drunk passenger with the keys, because in that event, the police would not have rendered drivers more vulnerable but equally vulnerable.

In this case, defendant did not arrest a sober driver, leaving an intoxicated passenger to continue down the roadway. He attempted to stop an intoxicated driver who was endangering the public. Nothing about the Seventh Circuit case dealt with clearly established law regarding pulling

drivers over, stopping drivers using stop sticks or similar devices, roadblocks, or anything that could be considered comparable to the facts involved in this case.

Even if plaintiff had been able to show that the law was clearly established, she fails to show that her constitutional rights were violated.

### e. Substantive Due Process Clause Violations

Generally, state actors are not liable for private acts under the Due Process Clause. *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196–97 (1989)). There are two recognized exceptions to the rule: (1) the special relationship doctrine and (2) the danger creation theory. *Id.* "A special relationship exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual (e.g. when the individual is a prisoner or involuntarily committed mental patient)." *Id.* Plaintiff raises both exceptions in this case.

The danger creation exception exposes a state actor to liability "if it created the danger that harmed that individual—that is, provided that the other elements of a § 1983 claim have been satisfied." *Id.* The Tenth Circuit has noted that although "many state activities have the potential for creating some danger—as is true of most human endeavors—[] not all such activities constitute a 'special' danger giving rise to § 1983 liability." *Id.* at 572. For a state actor to be liable, a plaintiff has to "allege a constitutionally cognizable danger . . . . the danger creation theory must ultimately rest on the specifics of . . . a claim." *Id.* at 572–73. Any such claim must be "predicated on reckless or intentionally injury-causing state action which shocks the conscience." *Id.* at 573. It is not enough to show that the state actor increased plaintiff's risk of harm from third persons; a plaintiff "must also show that the state acted with the requisite degree of culpability in failing to protect the plaintiff." *Id.*

But before either exception applies, "[i]n order to prevail on their substantive due process claim, Plaintiffs must demonstrate that the state acted in a manner that shocks the conscience." *Id.* at 571. "The Due Process Clause is not a guarantee against incorrect or ill-advised [government] decisions." *Id.* at 573. Negligent conduct is insufficient to expose the government to liability; a "§ 1983 violation must be predicated on a state action manifesting one of two traditional forms of wrongful intent . . . (1) an intent to harm; or (2) an intent to place a person unreasonably at risk of harm." *Id.* The second form covers reckless actions and includes "when a state actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious and unreasonable disregard of the consequences." *Id.* at 574. In addition to showing culpability, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of potential or actual harm that is truly conscience shocking." *Id.*

As mentioned above, due process protection usually applies to deliberate police actions intended to deprive individuals of life, liberty or property. *Moore*, 438 F.3d at 1040 (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)) (listing examples of conscience-shocking conduct, including: stomach pumping, paddling students, and intentionally destroying inmate property). The Tenth Circuit in *Moore*, emphasized that "it is well settled that negligence" is insufficient and that "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* Finally, the court noted that "[e]ven knowingly permitting unreasonable risks to continue does not necessarily rise to the level of conscience shocking." *Id.*

Further, in cases where government officials are placed in time-sensitive, high-pressure situations, an even higher standard applies. *See Lewis*, 523 U.S. at 853. In such cases, courts require plaintiffs to show that the government official acted with an intent to harm. *Perez v. Unified Gov't of*

-11-

*Wyandotte Cnty.*, 432 F.3d 1163, 1166 (10th Cir. 2005)). This is based on the idea that "liability for deliberate indifference . . . rests upon the luxury . . . of having time to make unhurried judgments, upon the chance for repeated reflection, largely uncomplicated by the pulls of competing obligations." *Lewis*, at 853. In *Lewis*, the Supreme Court held that "high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability," but the Court explained that prison officials with time to reflect—"such extended opportunities to do better . . . teamed with protracted failure even to care" might sufficiently shock the conscience for § 1983 substantive due process liability. *Id.* at 853–54.

### f. Plaintiff Fails to Establish a Constitutional Violation

The first step in analyzing the constitutional violation portion of "a claim of qualified immunity against § 1983 substantive due process claim, is to determine whether a plaintiff has asserted a violation of a constitutional right at all." *Moore*, 438 F.3d at 1040 (quoting *Siegert v. Gilley*, 500 U.S 226, 232 (1991)). "The ultimate standard for determining whether there has been a substantive due process violation is whether the challenged government action shocks the conscience of federal judges." *Id.*

When determining whether the facts of an individual case shock the conscience sufficiently to give rise to a substantive due process violation, courts consider "(1) the need for restraint in defining [the] scope [of due process claims]; (2) the concern that § 1983 not replace state tort law . . . and (3) the need for deference to local policymaking bodies in making decisions impacting upon public safety." *Uhlrig*, 64 F.3d at 573.

*The Need For Restraint in Defining the Scope of Due Process Claims*

First, this case appears to present a novel factual situation for § 1983 liability, as plaintiff could not provide the court with any cases with similar factual circumstances. The court would be hesitant to

-12-

expand the scope of § 1983 liability to include situations where police or highway patrol officers pull individuals over either for public safety concerns or for general traffic stops.

*The Concern That § 1983 Claims Not Replace Tort Law*

Second, the court is concerned that the facts and claims in this case are more analogous to tort claims. In fact, all other claims in this suit are either based on negligence or products liability theories.

*The Need For Deference On Public Safety Decisions*

Third, it is important to consider whether there is a need to defer to local policymaking bodies when public safety decisions are implicated. In this case, authorities were in pursuit of an individual who was creating a public danger by violating various traffic laws. He was driving the wrong way on a one-way highway in plaintiff and many other drivers' direction. Defendant decided that he should attempt to pull drivers over and stop the pursued individual using stop sticks.

At most, defendant's behavior was negligent, not deliberate or intentional. Plaintiff's pleadings allege that

- defendant decided to deploy stock sticks to end the pursuit of Smith's vehicle;
- he partially blocked the south-bound lanes with his car and used stop sticks to block the remainder of the south-bound traffic;
- he stopped traffic that was traveling the legal direction on the highway by putting his hands in the air with the palms facing outward;
- he gave no further directions to drivers and walked off the road and looked south where Smith was approaching, driving erratically and the wrong way down the highway; and
- plaintiff's vehicle was around 158 feet from the stop sticks with one vehicle between her and the stop sticks.

Plaintiff's briefing alternatively argues that these actions demonstrate an expectation or intention that plaintiff would be injured or that defendant acted with reckless disregard of the risk plaintiff was exposed to. The court finds this an unreasonable interpretation of the facts.

The court finds this case more analogous to the high-speed chase police cases, where police were unable to deliberate or reflect on their actions, therefore requiring plaintiff to show that defendant intended harm by constructing the roadblock. She has not. But even if the court were to apply the less stringent deliberate indifference standard that is more analogous to recklessness, this case does not involve the type of government decision or action that would shock the conscience and justify a substantive due process claim.

In *Perez v. Unified Government of Wyandotte County*, the Tenth Circuit applied the intent to harm standard set out by the Supreme Court in *Lewis* requiring actual deliberation rather than mere negligence. 432 F.3d at 1166.

> The Court cautioned that "actual deliberation" meant more than having a few seconds to think. . . . The intent to harm standard is not limited to situations calling for split-second reactions. Rather, it applies whenever decisions must be made in haste, under pressure, and frequently without the luxury of a second chance. . . . the intent-to-harm standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.

*Id.* at 1167 (applying *Lewis*, 523 U.S. at 851 and quoting *Terrell v. Larson*, 396 F.3d 975, 978 (8th Cir. 2005)). Although plaintiff disagrees, this is circumstances of this case suggest just such a situation—requiring intent to harm. A drunk or erratic driver speeding down the highway at around 100 mph against traffic is a very dangerous, fluid situation. Defendant and the other law-enforcement officers responding to the situation would not have had the luxury of calm and reflective deliberation. But under either standard, the court finds that defendant's conduct did not shock the conscience.

The KHP is in the best position to establish policies regarding the use of stop sticks and what measures should be taken to protect those in the vicinity. To the extent that plaintiff may be entitled to

-14-

relief, her claims sound in torts. Based on the three considerations discussed above, the court finds that plaintiff has not shown that the facts of this case sufficiently shock the conscience to allow her claims to proceed under § 1983.

### g. The Court Need Not Address the Legal Exceptions

Plaintiff argues that defendant Bouse is liable under either or both exceptions to the rule that government officials are generally not liable for the acts of private third parties: the special relationship doctrine and/or the danger creation theory. Tenth Circuit case law suggests that defendant could only be liable under the state created danger theory or the special relationship doctrine because the first only applies when a plaintiff is not in custody and the second only applies when she is. *See Gray v. Univ. of Colo. Hosp. Auth.*, 672 F.3d 909, 923 (10th Cir. 2012) (providing a very useful history of the state created danger theory). But in any event, the court need not address these exceptions because plaintiff did not show that defendant Bouse's actions shock the conscience. Her § 1983 claim is dismissed.

### 3. The Court Declines to Assert Supplemental Jurisdiction

Defendant Bouse asks the court to decline to assert supplemental jurisdiction over the remaining state law claims, because the sole federal claim against him is dismissed. If the court dismisses all claims over which it had original jurisdiction, 28 U.S.C. § 1367(c) provides that the court may decline to exercise supplemental jurisdiction over remaining state law claims. Whether to try state claims in the absence of a triable federal claim is discretionary, but the court should consider "the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness" when deciding whether to retain jurisdiction. *Anglemyer v. Hamilton Cnty. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995).

This case was filed February 3, 2017. The motions to dismiss were filed in March 2017 and the court stayed the case August 8, 2017—about one month after the initial scheduling conference. This case has had relatively few pretrial proceedings. Generally, when all federal claims are dismissed, a

federal court should decline supplemental jurisdiction. The court bears in mind that "[n]otions of comity and federalism demand that a state court try its own lawsuits, absent compelling reasons to the contrary." *Thatcher Enters. V. Cache Cnty. Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). The court therefore declines to assert supplemental jurisdiction over the remaining claims in this case.

The Stop Stick Defendants' Motions to Dismiss and defendant Bouse's Motion to Dismiss the negligence claim are therefore denied as moot. This case is dismissed for failure to state a claim on the civil rights claim, Count I, and the court declines to assert supplemental jurisdiction over the remaining claims. This case is dismissed.

**IT IS THEREFORE ORDERED** that defendant Stop Stick, Ltd.'s Motion to Dismiss (Doc. 11) is denied as moot.

**IT IS FURTHER ORDERED** that defendant Stoptech, Ltd.'s Motion to Dismiss (Doc 13) is denied as moot.

**IT IS FURTHER ORDERED** that defendant Andrew Bouse's Motion to Dismiss (Doc. 25) is granted in part and denied in part as moot.

This case is closed.

Dated February 28, 2018, at Kansas City, Kansas.

> s/ Carlos Murguia
> **CARLOS MURGUIA**
> **United States District Judge**